Green, J.
delivered the opinion of the court~
This is an indictment against tile p'aintiffs in error for the murder of Samuel Rayle. It appears that all the parties were at a still house drinking, and James Beets and Rayle had angry words and were about to engage in a fight. George Beets, one of the plaintiffs in error, then came up and to prevent the fight, declaring that they should not fight, but that if fighting was to be done, he would do it, whereupon Rayle struck hint a blow, and a fight between them ensued, during which George Beets threw Rayle to the ground. Joseph Beets stood by and encouraged George in the fight, and while it was progressing, James Beets returned to where the parties were engaged and shot Rayle with a of which he dried.
The justice of the peace before whom the parties were examined, took down in writing, the staternentof the deceased, which was made in view of death, and sworn to by him,-a copy of which statement he produced on the trial of the cause. The defendants objected to the reading of said papei~ as evidence against them, but the objection was overruled by the courts and the paper was read to the jury.
The court charged the jury, that if George Beets engaged in the fight in self defence, and while thus fighting, James Beets shot Rayle without the knowledge or consent of George, George would be guilty of no offence. But if George Beets fought willingly, so that he would be guilty of an affray, and while thus fighting, if James Beets shot Rayle, it would be manslaughter in George, although James shot without the knowledge or consent of George. The jury found the de-fendants George and James Beets guilty of manslaughter.
The defendants moved for a new trial, which was overruled by the court, and judgment pronounced against them,-from which judgment this appeal in error is prosecuted.
The first question is-whether the charge of the court is erroneous? It is ~ertain that if George Beets, in the ~ght, had himself killed Rayle, it would be manslaughter. - He was not fighting in self defence, but was engaged willingly in the combat. The fact that Rayle gave the ñrst blow does not ~effect the question otherwise than to constitute a great prov~ *108 ocatioa, which will reduce the killing to manslaughter, Arch" bold, bottom page, 324. It is laid down in the same book, and also in 1 Hawk, c 31, § 35, 56, that if when two are fighting, a third come up and take the part of one of them,* and kill the other, this will be manslaughter in the third party, and murder or manslaughter in the person whom he assisted, according as the fight was deliberate and premeditated, or upon a sudden quarrel, 1 Russell on Crimes, 398; 1 Hale, 446.
The principle is this, if a party be engaged in an unlawful act, and another assist him, and actually perpetrate the mischief, the first party shall be held responsible as though he had been the sole perpetrator himself. If a man is fighting with another not intending to kill, but by some unlucky blow death ensues, he is guilty of manslaughter, and why is this? Not because he intended to inflict death, but because he was engaged in an unlawful act, and the blow and the death were consequences of that act, and he must be responsible for it as though he had designed the result. Upon the same principle it is, that he is responsible to the same extent, though the fatal blow be struck by another, who assisted him without any concert on his part.
The assistance is given because he is engaged in the unr lawful act; and, as he unlawfully creates the occasion for the interference and assistance of the third party, he must answer for the consequences, as though he had been the sole actor. We are therefore of opinion that there is no error in the charge of the court below.
The next enquiry is — was the copy of the statement of Rayle, as taken down by the justice of the peace, proper evidence in this cause? This statement was made in view of death, and would unquestionably have been competent evidence, if the facts so stated by the deceased, had been proven by the witness, Johnston vs. State, 2 Yerger’s Rep. 58; McPherson vs. State, 9 Yerger’s Rep. 279.
But this was not done, — the witness does not swear that Rayle stated the facts contained in the paper. He says he *109 took down Rayle’s statement, and that the paper he produced was a copy from the original. It was this paper, thus proved, that was made evidence and was read to the jury. This does not come within the principle of the case of Rogers vs. Burton, Peck’s Reports, 108, in which the court says— “with respect to Judge Scott’s testimony, I take the rule to he that a witness may refresh his memory by reading his notes; if, after reading them, he can recollect the facts they detail; but if, after reading them, he cannot recollect the facts, then he ought to produce the notes themselves, — that was done in the present case, and it was sworn, by Judge Scott, that the notes were correctly taken, I am of opinion that the evidence was proper.”
In the case before the court, Ivy, the witness, does not state whether he recollects what Rayle stated or not; and as the written statement, according to the case relied on by the Attorney General, could only be used as secondary evidence, incase the witness could not recollect the facts; his non-recollection of them must appear, as a ground to let in the paper which was offered. We think the court erred in permitting the paper to be read to the jury.
Reverse the Judgment and remand the cause for another trial.

“His principle motive being to assist him,” Hawkins, B. 1, c 31, § 49, 50.
[Reporter.